UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GWENDOLYN MASON,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security<br><br>  Defendant. | 1:12-cv-00584 GSA<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## BACKGROUND

Plaintiff Gendolyn Mason ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for Disability Insurance benefits and Supplemental Security Income payments pursuant to Titles II and XVI of the Social Security Act.[1]  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedures, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

1

States Magistrate Judge.[2]

## FACTS AND PRIOR PROCEEDINGS[3]

On November 19, 2008, Plaintiff filed an application for disability insurance benefits, alleging disability beginning October 17, 2008.[4] AR 10, 268. Plaintiff's application was denied initially and on reconsideration; Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). AR 89-99, 103-110. ALJ Stephanie Martz held a hearing and issued an order denying benefits on December 13, 2010, finding Plaintiff was not disabled. AR 10-19. On March 12, 2012, the Appeals Council denied review, making it the final decision of the Commissioner for purposes of review. AR 1-4.

### 2. Medical Record[5]

Plaintiff's mental health treatment began in 2005. She participated in outpatient therapy for approximately one year and was treated with Zoloft during that time. AR 286. 297. Later, in October 2008, she was hospitalized at Harborview Medical Center for one week. AR 296. While in the hospital, Plaintiff reported a history of child abuse and neglect including severe sexual abuse. AR 297. She was experiencing insomnia, increased anxiety, and severe depression resulting in suicidal ideation. AR 286, 290, 297. Plaintiff was diagnosed with single episode major depression, posttraumatic stress disorder, and borderline personality disorder. AR 296. Plaintiff was given medication and participated in therapy while in the hospital. AR 296-300. She was prescribed Citalopram (Celexa) and Prazosin when discharged. AR 300.

*Outpatient Treatment at Harborview Mental Health Services*

After her release from the hospital, Plaintiff received follow-up outpatient treatment at

---

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 9 & 10.)
[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.
[4] Plaintiff also applied for benefits on August 15, 2005 but was denied benefits. She did not request a hearing before an ALJ. AR 194-203.
[5] The entire medical record was reviewed by the Court. AR. The relevant medical records are discussed as needed.

2

Harborview Mental Health Services. AR 306-311, 327-303. In addition to the above symptoms, progress notes reveal the onset of mild auditory and visual hallucinations (voices whispering at her and demons in her bed), self-injurious behaviors (scratching her arms), and paranoia. AR 340, 342, 350. She was diagnosed with major depressive disorder without psychotic features, posttraumatic stress disorder, and borderline personality disorder. AR 288. Plaintiff was prescribed Seroquel in addition to the above medications. AR 340, 342, 350. She responded well to psychopharmacological intervention, however, she continued to suffer from some depression, paranoia, and nightmares. AR 349-351.

Plaintiff finished treatment at Harborview in February 2009. AR 349. Over the next several months, Plaintiff received medications from her primary care provider. AR 349-351, 420. Progress notes show little in the way of mental health symptoms, except that Plaintiff requested sedation and refused to undress for a pelvic exam. The exam was recommended to aid in the diagnosis of Plaintiff's pelvic pain and rectal bleeding that she had been experiencing for two months. AR 410, 412, 414.

*Dr. Sharon Underwood, PhD*

On April 8, 2009, Dr. Sharon Underwood, Ph.D., a non-examining state agency psychologist, reviewed Plaintiff's medical records and completed a functional residual capacity ("RFC") assessment. AR 367-389. She found Plaintiff suffered from an affective disorder, personality disorder, and an anxiety-related disorder. AR 367. She rated mild restrictions in activities of daily living; moderate limitations in maintaining social functioning and maintaining concentration, persistence or pace; and noted no episodes of decompensation. AR 377. Dr. Underwood opined that Plaintiff had improved with treatment after her hospitalization and she should be able to perform simple and detailed routine work within 12 months of October 2008. AR 383. She recommended a quiet and slower paced work environment. AR 383.

*Dr. Beverly Norfleet, PsyD*

On September 17, 2009, state agency clinical psychologist Beverly Norfleet, PsyD, also completed a psychological evaluation. Dr. Norfleet rated Plaintiff's Global Assessment of Functioning Scale Score ("GAF") at 45.[6] AR 393-394. Dr. Norfleet found that: (1) Plaintiff's ability to reason and understand was unimpaired, but that she had some memory limitations and low average capacity for attention and concentration; (2) she could be overwhelmed by new information, but demonstrated average to above average ability in an environment involving repetition; (3) she was cooperative, but had trouble relating to authority and would have difficulty responding to supervision; (4) she was capable of appropriate interactions with coworkers if she was not overwhelmed; (5) she had psychological barriers that would interfere with her ability to cope with the stress and routine of normal employment; and (6) she would likely be unable to perform her past work as a greeter in a retail store. Notwithstanding the above, Dr. Norwood concluded that although Plaintiff's ability to adapt to a work environment is limited, she would be able to work with adequate mental health support. AR 392, 394.

*Treatment at Community Psychiatric Clinic*

In August 2009, one month prior to Dr. Norfleet's evaluation, Plaintiff began treatment at Community Psychiatric Clinic ("CPC"). AR 429. During the intake process, she complained of depression, nightmares, and panic attacks, but stated that her medications helped. AR 429, 431. She was diagnosed with borderline personality disorder, and psychotic disorder with hallucinations. AR 408, 421. Plaintiff was treated by a psychiatric social worker, Mike Staszak, MA, LMHC, and Dr. Brenda Gustafson, M.D., a psychiatrist at CPC. AR 429-463.

---

[6] The Global Assessment of Functioning or "GAF" scale reflects a clinician's assessment of the individual's overall level of functioning. *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 2000) ("DSM IV").. A GAF of 41–50 indicates that the individual has "[s]erious symptoms … OR any serious impairment in social, occupational, or school functioning …" DSM-IV at 32.

During the treatment period, Plaintiff's symptoms waxed and waned and her medications were adjusted accordingly. AR 430-432. Symptoms were heightened in November 2009, but Plaintiff responded well to increased levels of Seroquel. AR 420, 432, 437. Her attendance at counseling sessions in the Spring of 2010 were erratic due to car problems. AR 436. By June 2010, Plaintiff indicated she had stopped taking her medications, but acknowledged that her symptoms became exaggerated if she did not do so. AR 438. She committed to following her medication regimen. AR 438. By July 2010, Plaintiff had stabilized and was experiencing increased creativity and productivity (including writing a book about her mental health experiences), but also reported continued auditory and visual hallucinations, suicidal ideation, anxiety, and paranoia. AR 434, 463, 458. Despite Plaintiff's improvement, her counselor updated her crisis plan to address suicidal ideation. AR 434.

By August 2010, Plaintiff reported episodes of arm scratching, suicidal ideation, hallucinations, decreased sleep and increased stress due to housing concerns. AR 431. She saw "three men in her bathroom after waking up and felt like a woman was explaining to her telepathically why she had to kill the other two." AR 431. However, later in the month, she appeared to be better and reported that "a few episodes of cutting over the last eight to twelve months yielded no blood." AR 434-435. In August 2010, Plaintiff was seen three times to evaluate suicidal ideation. AR 434-434.

On August 27, 2010, Plaintiff met with Dr. Gustafson and reported the Seroquel worked better than Geodon (a drug that apparently was prescribed in place of Seroquel). AR 431. Dr. Gustafson discontinued the Geoden and prescribed additional medications. AR 431. In September 2010, the psychiatric social worker and Dr. Gustafson concurred that Plaintiff's diagnosis should be modified to include borderline personality disorder and severe major depressive disorder with psychotic features. AR 433.

*Michael Staszak, Psychiatric Social Worker*

In addition to the psychological assessments completed by the state agency psychologists, Plaintiff's psychiatric social worker completed two psychological/psychiatric assessments in September 2009 and October 2010 respectively.[7] AR 465-475. In September 2009, Mr. Staszak noted that Plaintiff's therapy had just begun, but he diagnosed her with chronic mental illness. He identified several moderate cognitive impairments and moderate to severe limitations in social functioning. AR 474-475.

In the later assessment in October 2010, Mr. Staszak assessed marked posttraumatic stress disorder symptoms, marked cognitive limitations, marked to extreme social limitations, marked suicidal ideation, marked depressed mood, and marked recurrent recollections of the past in the form of nightmares. AR 465-468. He opined that Plaintiff would not be able to work due to the nature of her chronic mental illness. AR 469.

### 3.     **The Disability Determination Standard and Process**

To qualify for benefits under the Social Security Act, Plaintiff must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work, but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

---

[7] The record also contains a document that appears to be a psychological assessment, however, the document is completely illegible. AR 451-457.

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1520(a)-(f). The ALJ proceeds step by step in order and stops upon reaching a dispositive finding that the claimant is disabled or not disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 416.927, 416.929.

The ALJ is required to determine (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;[8] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. 404, Subpart P, Appendix 1; (4) whether the claimant retained the RFC to perform her past relevant work;[9] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)-(f).

### 4. Summary of the ALJ's Findings and Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 14-21. More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 17, 2008. AR 12. Further, the ALJ identified major depressive disorder with psychotic features, posttraumatic stress disorder, and borderline personality disorder as severe impairments. AR 12-13. The ALJ performed an analysis pursuant to paragraphs B and C for the listing impairments of mental disorders and determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments under 12.04, 12.06, and 12.08. AR 13-15.

---

[8] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

[9] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 404.1545. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

Based on a review of the entire record, the ALJ determined that Plaintiff has the RFC to perform the requirements of all work activity; that Plaintiff is limited to performing simple, detailed, but routine work tasks; and that Plaintiff can only work in a quiet environment with few coworkers that is not overly fast paced. AR 15-18. After considering all of the above, the ALJ found that Plaintiff could perform her past relevant work as a library shelver. AR 19.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## DISCUSSION

**I.     The ALJ Improperly Relied Upon the Consultative Examiners' Opinions and Discounted the Report of Plaintiff's Social Worker. Accordingly, the ALJ's Decision is Not Supported by Substantial Evidence.**

Plaintiff argues the ALJ improperly assessed the medical record. Specifically, she contends the ALJ erroneously discounted the opinion of Plaintiff's social worker. Instead, the ALJ relied on Dr. Underwood's opinion that was predicated on expected medical improvement that that did not occur. Moreover, the ALJ improperly ignored the GAF score assigned by Dr. Norfleet which indicates that Plaintiff is unable to work. As a result, the ALJ's decision is not supported by substantial evidence. Plaintiff requests that the case be remanded to determine

8

whether she meets or equals a listing under 12.04, 12.06, and 12.08, and if not, for a reassessment of her RFC. (Docs. 14 & 16).

In response, the Commissioner argues that the ALJ properly assessed the psychologists' opinions and properly rejected the social worker's opinion because it was based on Plaintiff's reports of disabling symptoms which the ALJ found not to be credible. Defendant contends the RFC incorporates the limitations the consulting psychologists identified, and remand is not appropriate. (Doc. 15).

### (a)    *The Legal Standards*

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians), (2) those who examine but do not treat the claimant (examining physicians), and (3) those who neither examine nor treat the claimant (non-examining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). The opinion of a non-examining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1456 (9th Cir. 1984).

In addition to the above, the regulations provide that an ALJ should consider evidence from other sources in rendering a disability determination. 20 C.F.R. §§ 404.1527(a)(2);

416.913(d); 416.927(a)(2). Although a licensed social worker is not an acceptable medical source who can provide evidence of a medically determinable impairment, 20 C.F.R. § 416.913(a), a licensed social worker falls under "other sources" who can provide evidence to "show the severity of [a claimant's] impairment." 20 C.F.R. §§ 416.913(d)(1); 404.1527(d); SSR 06-03p. When evaluating an evaluation performed by "other sources" an ALJ should consider: (1) how long the source has known the individual and how frequently the source has seen the individual; (2) how consistent the opinion is with the other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment; and (6) any other factors that tend to refute the opinion. SSR 06-03p.

**(b)   Analysis**

In finding Plaintiff was not disabled the ALJ found that:  (1) Plaintiff received conservative treatment;(2) she was usually seen bimonthly by a therapist and when her symptoms increased in severity they responded well to medication adjustments; (3) she was not hospitalized and she did not go to the emergency room for mental symptoms; and (4) she was not referred for treatment with a psychologist or psychiatrist. AR 17. Moreover, when evaluating the medical evidence, the ALJ gave great weight to Dr. Norfleet's opinion and significant weight to Dr. Underwood's opinion. AR 18. Both doctors found that Plaintiff's had significant psychological limitations, however, Plaintiff would be able to work under the right conditions. AR 383, 392, 394.

As a preliminary matter, the Court is not persuaded by Plaintiff's argument that Dr. Norfleet's opinion supports a finding that Plaintiff is unable to work based the fact that her GAF score was 45. As previously noted, a GAF score is a generalized description of the claimant's level of psychological symptoms. *See, DSM-IV* at 32 (4th Ed.  2000) (DSM IV).  The

Commissioner has determined the GAF scale "does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings." 65 Fed.Reg. 50746, 50764-65 (Aug. 21, 2000).  Moreover, Dr. Norfleet's opinion is clear that Plaintiff is able to work under certain conditions even when taking the GAF score into consideration.  Therefore, the ALJ properly interpreted the findings in Dr. Norfleet's report. AR 394.

Notwithstanding the above, a review of the entire record reveals the ALJ's assessment of the medical evidence is faulty for other reasons.  First, contrary to the ALJ's representation, Plaintiff did not receive conservative treatment.  She was prescribed antidepressants and antipsychotic medications to treat her depression, anxiety, and auditory and visual hallucinations for almost two years.  AR 300, 340, 342, 349-351, 420, 431, 433.  Although Plaintiff did not require additional hospitalization, she received mental health treatment by a psychiatrist and psychiatric social worker beginning in August 2009, for a continuous fourteen month period, up until the time of the hearing.  AR 429-463.  The ALJ correctly notes that Plaintiff's symptoms improved with medication, however, she continued to experience depression, suicidal ideation, self-injurious behaviors, and auditory and visual hallucinations with sporadic frequency. AR 420, 431-432, 434, 463, 458.  Additionally, her social worker continued to evaluate her self-injurious behaviors and devised a crisis plan to address Plaintiff's suicidal ideation as late as August 2010. AR 434-435.

This information is important because Dr. Underwood's assessment, upon which the ALJ partly relies, was specifically based on the expected improvement of Plaintiff's symptom's within a year after October 2008, which did not occur.  AR 383.  Additionally, at the time Dr. Norfleet completed her assessment in September 2009, the only records she reviewed was the intake sheet from Plaintiff's hospitalization. AR 390.  She did not have the benefit of a more longitudinal assessment of Plaintiff's symptomatology which continued into 2009 and 2010 after Dr. Norfleet

11

completed her assessment.

The practitioner most familiar with Plaintiff's mental health condition was her psychiatric social worker who treated her from August 2009 until September 2010. AR 429-463. Instead of considering the information contained in the report, the ALJ gave it no weight because it was based primarily on Plaintiff's self-reports and was not supported by the medical record. AR 18. However, the social worker's report is corroborated in the medical record as outlined above. Moreover, a review of the report reveals that the social worker clearly delineated symptoms he observed himself versus those symptoms that were based on Plaintiff's self-reports. AR 465-472. Finally, the social worker was in close contact with Plaintiff's psychiatrist who was involved in her treatment and concurred with the social worker's overall diagnosis. AR 434.

Given the above, the ALJ's decision is not supported by substantial evidence. Notwithstanding the above, a finding of disability cannot be made based on the current record. Accordingly, the case is remanded to allow Plaintiff the opportunity to submit additional information regarding her psychiatric condition, including updated treatment information and evaluations. The state agency shall also conduct additional assessments if the ALJ determines it is necessary to do so. Upon a review of the additional evidence, the ALJ shall determine whether Plaintiff qualifies for a listed impairment pursuant to 12.06, 12.06, and 12.08. If she does not, the ALJ shall formulate a RFC that incorporates any limitations that are supported by substantial evidence.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Gwendolyn Mason and against Defendant Carolyn W. Colvin,

Commissioner of Social Security.

IT IS SO ORDERED.

   Dated:   **September 17, 2013**                  **/s/ Gary S. Austin**
                                                               UNITED STATES MAGISTRATE JUDGE